UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ANDREW PITT and TREVOR HOLLAND,<br><br>        Plaintiffs,<br><br>        v.<br><br>SELTICE STORAGE, LLC, KJ WATERCRAFT LEASING, INC., PRATHER ENTERPRISES, INC., KEVIN PRATHER, KERRY PRATHER, and ALYSSA PRATHER,<br><br>        Defendants. | Case No. 2:23-cv-441-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is a Motion for Partial Summary Judgment (Dkt. 31) filed by Plaintiffs Andrew Pitt and Trevor Holland. For the reasons explained below, the Court will deny the Motion.

**MEMORANDUM DECISION AND ORDER - 1**

## BACKGROUND

In May of 2023, an industrial building burned down in Coeur d'Alene, Idaho. *Def.'s Joint Statement of Facts* at 2, Dkt. 33.[1] At the time, three commercial tenants were leasing space in the building: (1) Prather Enterprises, Inc. (d/b/a KJ Marine) leased Suite A; (2) Trevor Holland leased Suite B; and (3) Bullet Painting leased Suite C. *Id.* As a result of the fire, a significant amount of personal property within the three units was damaged and destroyed.

Once the fire was extinguished, Kootenai County Fire and Rescue personnel began investigating its origin and cause. *Pitt Decl.*, Ex. 11 at 40, Dkt. 31-3 (hereinafter "Fire Dep't Report"). They interviewed the building owners and on-site tenants, viewed photographs and videos captured by witnesses, and inspected burn patterns and mass loss on the interior and exterior of the building. *See id.* at 43–44. Following the inspection, the investigators drafted a report (the "Fire Department Report") describing their investigation and stating their findings as to the cause and origin of the fire. *Id.* at 41–44.

---

[1] Two fires occurred at the same location, three days apart. *Def.'s Joint Statement of Facts* at 3, Dkt. 33; *see also Pl.'s Reply* at 7, Dkt. 39. Both fires contributed to the destruction of the building. *Id.*

**MEMORANDUM DECISION AND ORDER - 2**

At the outset, the investigators identified two "[p]ossible" causes of the fire: electrical defects and improperly stored wood staining rags. *Id.* at 43. After an initial inspection of the building's wiring and electrical boxes, however, they were left with "inconclusive findings for cause," and a subsequent electrical inspection by the Assistant State Fire Marshal revealed "no definitive signs of causing the fire." *Id.* Next, investigators considered the possibility that improperly stored wood staining rags had caused the fire. In an interview with Captain Brooks Brown, Kevin Prather—one of the building's co-owners and the President of KJ Marine— stated that his employees had completed a wood-staining project outside the building earlier that day. *Id.* at 44. When they finished, Prather explained, the employees moved the freshly stained wood inside Suite A, laid the wood on felt on the concrete floor, and "laid out the rags flat on the floor to dry." *Id.* Prather further stated that later, at about 5:00 p.m. on the same day, he and his son dropped by the building to check on the rags and found everything in order. *Id.*

Based on burn patterns and the degree of mass loss in certain areas, the investigators concluded that Suite A, leased by KJ Marine, was the origin of the fire. *Id.* They also concluded that the "most likely cause [of the fire] was improperly disposed waste from [the] staining operation" completed earlier that day by the KJ Marine employees. *Id.* With that, the investigators concluded, any

further investigation into the cause of the fire "should be done by the insurance co." *Id.*

In June of 2021, Plaintiff Trevor Holland entered into a Lease Agreement with Seltice Storage, LLC, under which Holland would lease Suite B and two parking spaces. *Def.'s Joint Statement of Facts* at 4, Dkt. 33; *Prather Decl.*, Ex. 1, Dkt. 38-1 (hereinafter "Lease Agreement"). The lease was set to expire on June 30, 2024, and at the time of the fire, Holland remained the tenant of Suite B—immediately adjacent to KJ Marine's Suite A. *Def.'s Joint Statement of Facts* at 4, Dkt. 33. According to Holland, Plaintiff Andrew Pitt was a business partner who had a financial interest in some of the damaged and destroyed personal property that Holland stored in Suite B. *Pl.'s Statement of Undisputed Facts* ¶¶ 23–25, Dkt. 31-1.[2]

In October of 2023, Holland and Pitt filed this lawsuit against various individuals and entities for damages caused by the May 2023 fire. The defendants include three individual co-owners of the destroyed building,[3] Seltice Storage,

---

[2] The extent of Pitt's financial interest in the destroyed and damaged personal property is disputed. *See Def.'s Joint Statement of Facts* at 4, Dkt. 33. At this stage, the Court need not—and does not—make any determination as to the truth of the plaintiffs' allegations on this subject.

[3] The building is owned by Kevin Prather, Kerry Prather, and Alyssa Prather. The fourth (Continued)

LLC, KJ Watercraft Leasing, Inc., and KJ Marine. *See Am. Compl.* ¶¶ 2–5, Dkt. 15. The plaintiffs assert claims for negligence and gross negligence and seek both compensatory and punitive damages. *Id.* at 6–10.

Soon after this case was filed—and before the Court even held a scheduling conference—the plaintiffs filed a Motion for Partial Summary Judgment (Dkt. 31). They ask the Court to grant their negligence claim as a matter of law and proceed to trial only as to damages and their remaining claim for gross negligence. For the reasons explained below, the Motion will be denied.

## LEGAL STANDARD

"Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact," and the movant is entitled to judgment as a matter of law. *United States v. JP Morgan Chase Bank Account No. Ending 8215*, 835 F.3d 1159, 1162 (9th Cir. 2016); FED. R. CIV. P. 56(a). At the summary judgment stage, courts are not to "weigh the evidence and determine the truth of the matter," but only to "determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Thus, "where evidence is genuinely disputed on a

---

co-owner, Kelly Prather, is not a defendant in this lawsuit. *Def.'s Joint Statement of Facts* at 4, Dkt. 33.

particular issue—such as by conflicting testimony—that issue is inappropriate for resolution on summary judgment." *Zetwick v. County of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017); *see also Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1472 (9th Cir. 1994). To survive summary judgment, a party must only provide evidence "such that a reasonable juror drawing all inferences in favor of the respondent could return a verdict in the [party's] favor." *Reza v. Pearce*, 806 F.3d 497, 505 (9th Cir. 2015) (quoting *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).

## DISCUSSION

The Court will deny summary judgment for one simple reason: the cause of the fire is material and genuinely disputed. One of the key factual questions underlying the plaintiffs' negligence claim is who or what caused the fires that destroyed the building in May of 2023. Based upon the evidence before the Court, that question has not been definitively answered.

**1.      The Fire Department Report is likely admissible under the public records exception to the rule against hearsay.**

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Hill v. Walmart Inc.*, 32 F.4th 811, 822 (9th Cir. 2022) (quoting *Orr v. Bank of America*, 285 F.3d 764, 774 (9th Cir. 2022)); FED. R. CIV. P. 56(e). Here, the plaintiffs offer the Fire Department Report as conclusive proof

that the KJ Marine employees started the fire. The defendants respond, first, that

the Report contains inadmissible hearsay. Moreover, they argue, the opinions

stated in the Report—even if admissible—are not conclusive.

The first question this Court must address is whether the relevant portions of

the Fire Department Report are admissible. A statement constitutes hearsay if it

was made out of court and is offered by a party to prove the truth of the matter

asserted in the statement. FED. R. EVID. 801(c). While hearsay is generally

inadmissible, there are numerous exceptions to that rule. FED. R. EVID. 803, 804 &

807. The public records exception, for example, allows the admission of "a record

or statement of a public office if:"

> (A) it sets out:
>> (i) the office's activities;
>> (ii) a matter observed while under a legal duty to report, but not
>> including, in a criminal case, a matter observed by law-
>> enforcement personnel; or
>> (iii) **in a civil case** or against the government in a criminal case,
>> **factual findings from a legally authorized investigation**; and
> (B) the opponent does not show that the source of information or other
> circumstances indicate a lack of trustworthiness.

FED. R. EVID. 803(8) (emphasis added).

At the outset, the written statements within the Fire Department Report

plainly fall within the definition of hearsay. Investigators drafted the Report

outside of court, and the plaintiffs now offer the Report to prove the truth of the

matters asserted in the report—that is, the truth of their claim that improperly stored staining rags caused the building fire. The remaining question is whether the Report falls within any of the hearsay exceptions.

The conclusions stated in the Fire Department Report are likely admissible under the public records exception to the hearsay rule. First, those statements are contained in an investigative report produced by a public office; namely, Kootenai County Fire & Rescue. Next, the report contains "factual findings" as that term has been interpreted in controlling precedent. The defendants advocate a narrow interpretation of the term "factual findings" that would exclude "evaluations or opinions" contained in investigative reports. *Def.'s Resp. in Opp.* at 5, Dkt. 34 (citing Official Notes of the 1974 Advisory Committee). But both the Ninth Circuit and United States Supreme Court have rejected the defendants' approach in favor of a "broader interpretation." *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 162 (1988); *Jensen v. EXC, Inc.*, 82 F.4th 835, 847 (9th Cir. 2023).

In *Beech Aircraft Corp. v. Rainey*, the Supreme Court affirmed the admissibility of an investigator's "conclusions and opinions" that pilot error was the "most likely" cause of an airplane crash. 488 U.S. at 158. Squarely rejecting the "narrow view" advanced by the defendants in this case, the Supreme Court explained that "factual findings" does not "mean simply 'facts,'" but "includes

conclusions or opinions that flow from a factual investigation." *Id.* at 163–64.
Notably, the Court highlighted, Rule 803(8) "does not state that 'factual findings'
are admissible, but that '*reports* ... setting forth ... factual findings' (emphasis
added) are admissible. On this reading, the language of the Rule does not create a
distinction between 'fact' and 'opinion' contained in such reports." *Id.* at 164; *see
also Jensen*, 82 F.4th at 847.[4]

Here, the Fire Department Report contains a detailed narrative of the
investigation performed by Deputy Fire Marshal Mike Bass and Shift Investigator
Captain Brown Brooks. *See Fire Dep't Report*, Dkt. 31-3 at 41–44. The Report
includes both factual observations and the evaluative opinions of the investigators.
The bulk of the statements are factual observations. *See, e.g.*, *id.* at 43 ("[N]o
arcing noted on box or wiring at separation."), ("Unit B sustained a significant
amount of damage that appeared to be towards the A unit with destruction of a
demising wall. Unit C had sustained mostly water damage from fire operations,
with some smoke damage as well."), ("We utilized burn patterns and degree of

---

[4] The defendants' reliance on the Tenth Circuit's 1944 decision in *Franklin v. Skelly Oil Co.* is not persuasive. 141 F.2d 568 (10th Cir. 1944). First, Tenth Circuit decisions do not bind this Court. Second, the Federal Rules of Evidence did not even exist when *Franklin* was decided, so that decision has little bearing on the text of Rule 803(8). Finally, as explained above, *Franklin* contradicts controlling Ninth Circuit and Supreme Court precedent.

mass loss to find several areas of focus."). There are also numerous statements that fall within the second category, reflecting the investigators' opinions about the origin and cause of the fire. *Id.* ("[W]e initially determined [electrical wiring] not to be the cause . . ."), ("Capt. Brown and I determined the two Possible causes of the fire were . . ."), ("Unit A was determined to be origin of fire . . ."), ("Capt. Brooks and I inspected the wiring/electrical boxes with inconclusive findings for cause."), ("Capt. Brown and I determined the area of origin to be in the BC corner . . ."), ("The electrical wiring /boxes had no definitive signs of causing the fire."), ("[W]e agreed that the origin and most likely cause was improperly disposed waste from staining operation."), ("Burn patterns suggest that the fire burned up and out from that location which rapidly spread . . .").

Both kinds of statements are likely admissible under the public records exception to the hearsay rule. As the Supreme Court explained in *Beech*, Rule 803(8) does not require the court to "draw some inevitably arbitrary line between the various shades of fact/opinion that invariably will be present in investigatory reports[.]" 488 U.S. at 169. On the contrary, "portions of investigatory reports otherwise admissible under Rule 803(8)(C) are not inadmissible merely because they state a conclusion or opinion. As long as the conclusion is based on a factual investigation and satisfies the Rule's trustworthiness requirement, it should be

admissible along with other portions of the report." *Id.* at 170. Here, the Fire Department Report sets out the factual underpinnings of the investigators' evaluative statements about the origin and cause of the fire. The Court need not split hairs to determine which statements are evaluative and which are not.

It is worth noting that there are two additional issues not briefed by the parties that may bear on the admissibility of the Fire Department Report. First, the public records exception only applies to records and statements produced as part of a "legally authorized investigation." FED. R. EVID. 803(8). Kootenai County Fire & Rescue personnel may have been authorized or required to investigate and report on the cause of the fire. However, because neither party has offered evidence or argument on this point, the Court will leave it alone for now. Second, Rule 803(8) contains a "provision for escape" granting trial courts discretion to exclude the content of a public record when an opponent has shown it to be untrustworthy. *Beech*, 488 U.S. at 167 (citing FED. R. EVID. 803(8)(B)). The defendants have not challenged the trustworthiness of the Fire Department Report, and the Court sees no reason to distrust the Report. The Court nevertheless leaves open the possibility that the defendants may raise such a challenge in the future.

In sum, although the Fire Department Report contains hearsay, those statements appear to fall within the public records exception and may therefore be

considered as evidence supporting the plaintiffs' request for summary judgment.

**2.      The plaintiffs are not entitled to summary judgment.**

The plaintiffs seek summary judgment on their negligence claim. To succeed

on a negligence claim in Idaho, a plaintiff must establish "(1) a duty, recognized by

law, requiring the defendant to conform to a certain standard of conduct; (2) a

breach of that duty; (3) a causal connection between the defendant's conduct and

the resulting injury; and (4) actual loss or damage." *Black Canyon Racquetball

Club, Inc. v. Idaho First Nat'l Bank*, 804 P.2d 900, 904–05 (Idaho 1991). To obtain

summary judgment, then, the plaintiffs must show that there are no genuine issues

of disputed fact and that they are entitled to judgment as a matter of law *as to each

of those four elements*.

Certain elements of a negligence claim present "questions of law," meaning

that it is the *court's* responsibility to determine whether the element is satisfied.

*See Milus v. Sun Valley Co.*, Docket No. 49693-2022, 2023 WL 8722470, at *5

(Idaho 2023) ("The existence of a duty is a question of law for this Court."

(quoting *Harrigfeld v. Hancock*, 90 P.3d 884, 888 (Idaho 2004)). Courts

sometimes resolve questions of law at the summary judgment stage, and

sometimes resolve them later when instructing the jury before deliberations begin.

Other elements of negligence, however, present "questions of fact" that must be

answered by a jury at trial, not by the court. *See, e.g.*, *Oswald v. Costco Wholesale Corp.*, 473 P.3d 809, 824 (2020) ("[T]he foreseeability of the harm is a question of fact for the jury."). Factual questions may only be resolved on summary judgment when a court finds that, based upon the evidence presented by the parties, reasonable minds could not differ as to the answer. Causation is one such question of fact for the jury. *Walker v. American Cyanamid Co.*, 948 P.2d 1123, 1130 (Idaho 1997).

Causation is hotly disputed in this case. The plaintiffs seek to establish causation in two ways. They first rely upon the Fire Department Report as "irrebuttable evidence" that "improper storage of the staining rags" caused the fire. *Pl.'s Memo. in Supp.* at 20, Dkt. 31-2; *Pl.'s Statement of Undisputed Facts* ¶ 9, Dkt. 31-1. The Court has carefully reviewed the Report and finds it relevant, but by no means conclusive. To begin, the opinions stated in the Report are not as definite as the plaintiffs suggest. True, the investigators concluded that improperly disposed staining rags were "the origin and *most likely cause*" of the fire. *Fire Dep't Report*, Dkt. 31-3 at 43. They tempered that conclusion, however, by listing the "Cause of Ignition" as "under investigation" and noting that their inspection of the building's electrical components produced "*inconclusive* findings for cause." *Id.* (emphasis added).

Indeed, the defendants dispute the Report's conclusions and argue that the fire could not have been caused by spontaneous ignition of the rags. For support, they rely upon an affidavit and investigative report drafted by Glenn Johnson, a Certified Fire Investigator with fifty-two years' experience in the fire industry. *See Johnson Decl.* ¶¶ 3 & 4, Dkt. 36. In the spring of 2024, Philadelphia Insurance Company retained Johnson for the purpose of determining the origin and cause of the fire. *Id.*, Ex. 1 at 5. Following his investigation, Johnson drafted a report explaining that the fire was probably not caused by the spontaneous ignition of staining rags. *Id.* Johnson highlighted two facts supporting that conclusion. First, individuals who handled the staining rags two hours after their disposal and shortly before the fire began did not notice any heat buildup or odors emanating from the rags—both of which would be expected to occur prior to spontaneous ignition. Moreover, Johnson noted, the staining rags were reportedly separated and spread out on a concrete floor, which would have allowed any developing heat to quickly dissipate. Under these conditions, Johnson concluded, it is "unlikely" that spontaneous ignition could have occurred. *Id.*

The plaintiffs ask the Court to disregard Johnson's report because it is based upon "untruthful" statements made by Defendant Kevin Prather. *Reply* at 4, Dkt. 39. "It is well settled," the plaintiffs explain, that "when a witness testifies

untruthfully then the trier or fact can disregard all the witness's testimony." *Id.* at 5. Indeed it is. But that only highlights the reason why summary judgment is inappropriate here: it is for the <u>*trier of fact*</u> to determine whether to believe Kevin Prather's statements and whether to credit Johnson's report. *See Chavez v. Allianz Global Risks US Ins. Co.*, Case No. 1:22-cv-00176-AKB, 2024 WL 1772029, at *4 (D. Idaho Apr. 24, 2024) ("The court is prohibited from weighing the evidence or resolving disputed issues in the moving party's favor."). Ultimately, the defendants have presented sufficient evidence "on which [a] jury could reasonably find" in their favor on the element of causation. *Anderson*, 477 U.S. at 252. End of story.

The plaintiffs also seek to establish causation by invoking the doctrine of *res ipsa loquitur*. Translated, that Latin phrase means "the thing speaks for itself." *Res Ipsa Loquitur*, BLACK'S LAW DICTIONARY (11th ed. 2019). This doctrine allows a trier of fact to infer negligence when two elements are met: (1) the instrumentality or mechanism that produced the injury was under the "exclusive control and management of the defendant;" and, (2) under the circumstances, "common knowledge and experience would justify the inference that the accident would not have happened in the absence of negligence." *Jerome Thriftway Drug, Inc. v. Winslow*, 717 P.2d 1033, 1036 (Idaho 1986); *see also Idaho Civ. Jury Instr.* 2.26. "It is important to note," however, "that *res ipsa loquitur* does not create a

<u>presumption</u> that a defendant's negligence caused the injury, rather it is only an <u>inference</u> that the fact finder may accept or reject in considering the whole of the evidence." *Reber v. United States*, 951 F.2d 961, 964 (9th Cir. 1991) (emphasis added); *see also Wilson v. United States*, 645 F.2d 728, 730 (9th Cir. 1981) ("In this circuit, the application of the doctrine of *res ipsa loquitur* simply makes it permissible to draw an inference of negligence from a set of facts. Invocation of the doctrine does not establish a presumption of negligence or shift the burden of proof.") (internal citations omitted).

The plaintiffs' incorrect characterization of *res ipsa loquitur* as creating a burden-shifting *presumption*—rather than a permissible inference—of negligence is fatal to their argument for summary judgment. *Pl.'s Memo. in Supp.* at 6, Dkt. 31-2 (stating that *res ipsa loquitur* creates a "rebuttable presumption of negligence"). Although the Idaho Supreme Court has created some confusion by occasionally describing the doctrine of *res ipsa loquitur* as creating a "presumption," it has repeatedly held that application of the doctrine "does not shift the burden of proof," *Kolln v. Saint Luke's Regional Med. Ctr.*, 940 P.2d 1142, 1153 (Idaho 1997), but instead creates a "*permissive inference of negligence*," *id.* (quoting *Christensen v. Potratz*, 597 P.2d 595, 598 (Idaho 1979)) (emphasis in original). *See also Hale v. Heninger*, 393 P.2d 718, 722 (Idaho 1964)

("The application of the doctrine of *res ipsa loquitur* does not shift the burden of proof to the defendant.").

Even if the doctrine of *res ipsa loquitur* applied in this case,[5] it would raise only a permissive inference of negligence that the factfinder *could* accept or reject. *Enriquez v. Idaho Power Co.*, 272 P.3d 534, 538 (Idaho 2012); *Morgan v. New Sweden Irr. Dist.*, 322 P.3d 980 (Idaho 2014); *Krinitt v. Idaho Dept. of Fish and Game*, 357 P.3d 850, 854 (Idaho 2015). But, at the summary judgment stage, the Court must draw all reasonable inferences in the non-movant's favor. And ultimately, viewing the evidence in the light most favorable to the defendants, the Court has no doubt that a reasonable jury could reject the plaintiffs' theory of causation.

### 3.    Issues not resolved by this Order.

Several issues raised by the parties are not addressed in this Order. These include: whether KJ Watercraft Leasing is a proper defendant in this case; whether and to what extent the defendants owed a duty to each plaintiff; and whether and to what extent the plaintiffs' recovery may be foreclosed or limited by the Lease Agreement. None of these issues affect the outcome of the plaintiffs' Motion for

---

[5] At this stage, the Court makes no determination as to whether the requirements for applying *res ispa loquitur* are satisfied.

**MEMORANDUM DECISION AND ORDER - 17**

Partial Summary Judgment (Dkt. 31), and the Court will therefore leave them for another day.

### ORDER

**IT IS ORDERED that** Plaintiffs' Motion for Partial Summary Judgment (Dkt. 31) is **DENIED**.

DATED: May 13, 2024

B. Lynn Winmill
U.S. District Court Judge