UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ANDREW PITT and TREVOR HOLLAND,<br><br>Plaintiffs,<br><br>v.<br><br>SELTICE STORAGE, LLC, KJ WATERCRAFT LEASING, INC., PRATHER ENTERPRISES, INC., KEVIN PRATHER, KERRY PRATHER, and ALYSSA PRATHER,<br><br>Defendants. | Case No. 2:23-cv-00441-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court are Plaintiffs' Motion for Sanctions for Spoilage Violations (Dkt. 42) and Defendants' Motion to Strike Portions of Plaintiffs' Reply (Dkt. 50). For the reasons described below, the Court will deny both motions.

## BACKGROUND

*Pro se* plaintiffs Andrew Pitt and Trevor Holland brought this lawsuit after an industrial building owned and managed by the Prather family through Seltice Storage, LLC burned down in Coeur d'Alene in May 2023. Holland had a lease

agreement with Seltice Storage for a suite in the building and two parking spots. Pitt, who was not on the lease, apparently was Holland's business partner and had a financial interest in some property stored at the location.

Personnel from Kootenai County Fire and Rescue identified two potential causes of the fire: electrical defects and improperly stored wood staining rags. After completing the investigation in June 2023, they determined that the fire "most likely" resulted from the wood staining waste, though the evidence was inconclusive. *See* Dkt. 41. The fire department informed the Prathers that the insurance company should handle any further investigation and that the Prathers could begin clearing the property. *Dec. of Kerry Prather* ¶¶ 13-15, Dkt. 44.

What happened next is somewhat disputed. Holland states that he accessed the building a few times in June 2023, accompanied by Defendants, to retrieve salvageable property. At this time, he says that he also informed Kevin Prather that he had not maintained his insurance coverage. *Dec. of Trevor Holland*, ¶¶ 2-6, Dkt. 42; *Dec. of Trevor Holland*, ¶¶ 2-4, Dkt. 47. Apparently, Holland initially believed that the building was demolished on June 23, 2023, though this did not occur until September. *See Pls.' Mot. for Spoilage Violations* at 7, Dkt. 42. Defendants, on the other hand, claim that Holland made additional trips to the property in July and August, and that he canceled or failed to show up for several scheduled visits. *Defs.' Resp. Opp'n to Pls.' Mot. for Spoilage Violations* at 5-6, Dkt. 43 [hereinafter

MEMORANDUM DECISION AND ORDER - 2

*Defs.' Spoilage Opp'n*]; *Dec. of Kerry Prather* ¶¶ 17-19, Dkt. 44. Both parties agree that Holland did not mention Pitt, nor did he express intent to file a lawsuit.

On August 21, 2023, Pitt sent a letter to Defendants informing them of his interest in Holland's business and intent to file suit. The letter also notified Defendants of their obligation to preserve "all evidence, information, pictures, building permits, drawing and proof of compliance with all state and local building codes, regulations and all inspection records for the same." *Pls.' Rep. to Defs.' Spoilage Opp'n*, *Ex. C*, Dkt. 47 [hereinafter *Pls.' Spoilage Rep.*]. This was the first time Defendants learned of Pitt's existence.

On September 4, 2023, the Prathers had the building debris removed after taking several overhead videos. On September 27, Defendants' then-counsel responded to Pitt saying that he had no claim and that any future correspondence from him would be ignored. *Pls.' Spoilage Rep., Ex. D*, Dkt. 47. About two weeks later, Holland and Pitt filed this lawsuit *pro se*. They quickly sought partial summary judgment, which the Court denied in May 2024 (Dkt. 41).

In June 2024, Plaintiffs filed a motion seeking sanctions for spoliation of evidence based on the Prathers' failure to preserve the site of the fire. *Pls.' Mot. for Spoilage Violations*, Dkt. 42. The Prathers responded, in part, by denying an obligation to preserve the ruins of the building. *Defs.' Spoilage Opp'n* at 7, Dkt. 43. Plaintiffs filed a timely reply in which they introduced evidence regarding (1)

**MEMORANDUM DECISION AND ORDER - 3**

the letter from Defendants' prior counsel to Pitt in September 2023, and (2) discussions between Holland and Kevin Prather about Holland's lack of insurance. *Pls.' Spoilage Rep.* at 4-7, Dkt. 47. Defendants then moved to strike these portions of the Reply for inappropriately raising issues and facts for the first time. *Defs.' Mot. to Strike*, Dkt. 50. The Court now considers both motions.

## ANALYSIS

### A. Motion to Strike

Under the Federal Rules of Civil Procedure and the Idaho Local District Civil Rules, supporting affidavits and declarations must be filed with the motion rather than moving party's reply. Fed. R. Civ. P. 6(c)(2); Dist. Idaho Loc. Civ. R. 7(1)(b)(2). The point of this rule is fairness; the opposing party should have the chance to respond to evidence against them. *See Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996). The Court may, accordingly, decline to consider evidence raised for the first time in reply. *Id.* This determination turns on whether the new evidence primarily rebuts arguments in the non-moving party's opposition or provides information that should have been included in the opening brief. *Ingram v. Mouser*, No. 1:19-cv-00308, 2023 WL 1822293, at *2 (D. Idaho Feb. 8, 2023).

In the present case, another consideration is that Plaintiffs are appearing *pro se*. "It is an entrenched principle that *pro se* filings 'however inartfully pleaded are held to less stringent standards than formal pleadings drafted by lawyers.'" *United*

*States v. Qazi*, 975 F.3d 989, 991 (9th Cir. 2020) (quoting *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam)). Although "pro se litigants are bound by the rules of procedure," pleadings should thus be construed liberally in their favor. *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995).

Defendants seek to strike portions of Plaintiffs' Reply concerning (1) the letter from Defendants' then-counsel to Pitt in September 2023, which was sent in response to Pitt's letter threatening litigation; and (2) conversations between Holland and Kevin Prather shortly after the fire about Holland's failure to maintain proper insurance. *Defs.' Mot. to Strike* at 3, Dkt. 50. In an ideal world, Plaintiffs indeed would have submitted this evidence with their Motion. Given their *pro se* status, however, it was acceptable for them to include the material to rebut evidence presented in Defendants' Opposition. The Opposition discusses Pitt's August letter as Defendants' first notice of possible litigation, so it makes sense that Plaintiffs would include counsel's response to that letter as additional context. *See Defs.' Spoilage Opp'n* at 6, Dkt. 43. Likewise, the Opposition states that Defendants believed that Holland had insurance—a condition of his lease—and therefore they did not expect him to sue. *Id.* This information makes earlier conversations about Holland's lack of insurance relevant as rebuttal.

Moreover, as explained below, neither portion of Plaintiffs' Reply is particularly central to the underlying Motion for Sanctions, meaning that

Defendants are not unfairly disadvantaged by the inclusion. Accordingly, Defendants' Motion to Strike is denied.

### B. Motion for Sanctions

In their Motion for Sanctions, Plaintiffs claim that Defendants spoliated evidence by destroying remnants of the building several months after the fire. The appropriate sanction, Plaintiffs argue, is a causal finding that the fire resulted from improperly stored staining waste. Pursuant to Federal Rule of Civil Procedure 78(b), the Court finds that this matter is appropriate for decision without oral argument. Because Plaintiffs have not shown that Defendants had a duty to preserve the building, the Motion for Sanctions is denied.

Failure to preserve material evidence constitutes spoliation and is cause for sanctions. *State Farm Fire & Cas. Co. v. Gen. Motors, LLC*, 542 F. Supp. 3d 1124, 1128 (D. Idaho 2021); *see Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993). The duty to preserve evidence attaches as soon as a party anticipates litigation and "should reasonably know that evidence may be relevant." *State Farm*, 542 F. Supp. 3d at 1128. This Court assesses spoliation using a three-part test: "(1) the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a culpable state of mind; and (3) the evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Id.* (cleaned up)

(quoting *Bell v. City of Boise*, No. 1:09-cv-540-REB, 2015 WL 13778741, at *2 (D. Idaho Aug. 23, 2015)). The party seeking sanctions must establish each element. *Id.*

The first—and, in this case, decisive— question is whether Defendants had an obligation to preserve the site of the fire. "A party must preserve evidence it knows or should know is relevant to a claim or defense of any party, or that may lead to the discovery of relevant evidence." *Bown v. Reinke*, No. 1:12-cv-262-BLW, 2016 WL 107926, at *5 (D. Idaho Jan. 8, 2016). This duty can arise before litigation if the party has reason to anticipate a claim. *See id.* Defendants argue that they had no reason to expect a lawsuit when the building was destroyed in early September of 2023, and therefore they did not have a duty to preserve anything.

Pitt's letter—received by Defendants on August 21, 2023—did expressly threaten litigation and invoke the duty to preserve evidence. However, Pitt was not party to the lease. He had no direct relationship at all to Defendants, and they were unaware of his existence until the letter arrived late August. On the other hand, Holland—who was a tenant—gave no indication of his intent to sue throughout the summer of 2023. He did not inform Defendants of his relationship to Pitt, nor did he ask them to preserve the remnants of the building. Although "a future litigant is not required to make such a request," the adverse party must have some reasonable notice of a potential lawsuit. *Apple Inc. v. Samsung Elect. Co.*, 881 F. Supp. 2d

**MEMORANDUM DECISION AND ORDER - 7**

1132, 1136-37 (N.D. Cal. 2012). In this regard, the only information that Defendants had was that Holland apparently failed to maintain insurance and that an unknown person sent them a demand letter three months after the fire.

Further, Holland says that he initially believed that the building was destroyed on June 23, 2023, more than two months before it was actually torn down. *See Pls.' Spoilage Mot.* at 7, Dkt. 42. Why he had this misapprehension is unclear since he states that he had no notice of the destruction. *Dec. of Trevor Holland* ¶ 6, Dkt. 42. In other contexts, this would be understandable; a potential litigant cannot be expected to know whether the other party has maintained documents or electronic records. Here, however, the physical existence of the building was plain to see. Holland's lack of concern about its existence throughout July and August of 2023 further suggests that Defendants were not under a duty to preserve.

Finally, the Court notes that preserving the ruins of a building presents a different challenge from preserving typical evidence. *See Baliotis v. McNeil*, 870 F. Supp. 1285, 1290 (M.D. Pa. 1994) ("The scope of the duty to preserve evidence is not boundless."); *Truckstop.net, L.L.C. v. Sprint Commc'ns Co.*, No. CV-04-561-S, 2005 WL 8166974, at *2 (D. Idaho Feb. 18, 2005) (considering "the physical, spatial, and financial burdens created by ordering preservation"). Certainly, there are cases where a duty to preserve the structure would attach prior to litigation. But

MEMORANDUM DECISION AND ORDER - 8

in analogous situations, courts have primarily awarded sanctions when the plaintiff had control of the evidence and destroyed it before filing suit. *See Baliotis*, 870 F. Supp. at 1289-90 (burned building); *State BTO Logging, Inc. v. Deer & Co.*, 174 F.R.D. 690, 693 (D. Or. 1997) (logging harvester); *Dickinson Frozen Foods, Inc. v. FPS Food Process Sol. Corp.*, No. 1:17-cv-00519-DCN, 2019 WL 2236080, at *9 (D. Idaho May 21, 2019) (industrial freezer); *State Farm*, 542 F. Supp 3d at 1128 (burned car). Here, the site of the fire was documented extensively by the fire department and an insurance company prior to its destruction. Given the lack of meaningful notice of impending litigation, Defendants could not be expected to leave the ruins of the building indefinitely once this investigation was complete. Indeed, practical economic considerations would dictate that the site be promptly devoted to other commercial uses. For these reasons, the Court concludes that Defendants did not have a duty to preserve the building when they had it demolished in September 2023.

  The lack of notice of an impending lawsuit is also fatal to the second factor in a spoliation analysis: whether the party had a culpable mental state. Culpability does not require a finding of bad faith, but the party must be on notice of potential relevance to the litigation. *State Farm*, 542 F. Supp. 3d at 1130. In this case, Defendants did not have meaningful notice of any coming litigation, so they did not have notice that the evidence was potentially relevant. The Court declines to

analyze the third spoliation factor—whether the destroyed evidence was in fact relevant to Plaintiffs' claim—because the argument fails on the first two grounds.

The Court is sympathetic to Plaintiffs' status as *pro se* litigants and, particularly, to Holland's difficult circumstances in the summer of 2023. He had just lost his livelihood, and it is understandable that he failed in those initial months to assert the interests that would have activated Defendants' obligation to preserve evidence. But it would be unfair to make Defendants bear the costs of these failures. Fortunately, evidence was collected at the site by disinterested observers, which can be used to resolve issues concerning the cause of the fire. The utter lack of communication from Holland regarding a potential lawsuit or his relationship to Pitt is fatal to the argument that Defendants had a duty to preserve the building. Plaintiffs' Motion for Sanctions is, therefore, denied.

## ORDER

IT IS ORDERED that:

1. Plaintiffs' Motion for Sanctions for Spoilage Violations (Dkt. 42) is **DENIED**.

2. Defendants' Motion to Strike (Dkt. 50) is **DENIED**.

DATED: September 30, 2024

_____
B. Lynn Winmill
U.S. District Court Judge